# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**CHARLES CAMPBELL,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0948** (BOR Appeal No. 2055460)
                    (Claim No. 2014021769)

**DEBRICH, LLC/DUSTER TRUCKING,**
**Employer Below, Respondent**

# MEMORANDUM DECISION

Petitioner Charles Campbell, by counsel Reginald D. Henry and Lori J. Withrow, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Debrich, LLC/Duster Trucking, by counsel Daniel G. Murdock, filed a timely response.

The issue on appeal is whether Mr. Campbell is entitled to the requested treatment in the claim. On May 3, 2019, the claims administrator issued an Order denying a request for a referral for an EMG of the left leg and a request for a referral to an orthopedic surgeon for an evaluation of his left foot/ankle. Subsequently, the claims administrator denied requests for medication on September 26, 2019, and December 18, 2019. On July 8, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's Orders. This appeal arises from the Board of Review's Order dated November 4, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

1

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

See Hammons v. W. Va. Off. of Ins. Comm'r, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in Justice v. West Virginia Office Insurance Commission, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. See also Davies v. W. Va. Off. of Ins. Comm'r, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Campbell, a truck driver, was injured in the course of his employment on January 24, 2014. The Employees' and Physicians' Report of Injury, completed that day, indicates Mr. Campbell injured his left ankle when he stepped on a lump of coal at a river dock. The physician's section was completed by Huy Nguyen, M.D., who listed the diagnosis as left ankle fracture. The claim was held compensable for lateral malleolus fracture on January 31, 2014.

A left ankle MRI, performed on August 27, 2014, showed an old fracture of the distal fibula but no evidence of acute fracture or disruption of the tendons or ligaments. Mr. Campbell underwent a 3-phase bone scan which showed results consistent with a left ankle fracture on March 6, 2015. There was no evidence of complex regional pain syndrome.

On April 11, 2016, ChuanFang Jin, M.D., performed an Independent Medical Evaluation in which she diagnosed distal fibular fracture with nonunion and chronic pain syndrome. Dr. Jin opined that Mr. Campbell had reached maximum medical improvement. She asserted that the only treatment that would provide long-term benefits was exercise. Dr. Jin assessed 4% left ankle impairment. The claims administrator granted a 4% permanent partial disability award on May 19, 2016.

Timothy Deer, M.D., completed a Diagnosis Update on September 26, 2016, in which he requested the addition of causalgia of the lower limb to the claim. He also requested authorization of a trial spinal cord stimulator. He noted that Mr. Campbell had localized muscle atrophy, abnormal color and pigmentation, abnormal temperature, abnormal hair growth, and coldness in the lower left leg. On January 2, 2018, Dr. Deer diagnosed complex regional pain syndrome type II.

On July 7, 2017, the Office of Judges authorized a referral to a neurologist, affirmed a denial of a left lumbar sympathetic plexus block, added complex regional pain syndrome to the claim, denied authorization for a psychological evaluation for a spinal cord stimulator, and denied authorization of a 3-phase bone scan.

Prasadarao Mukkamala, M.D., performed an Independent Medical Evaluation on August 29, 2017, in which he diagnosed left distal fibula fracture and found that Mr. Campbell had reached maximum medical improvement. He assessed 4% impairment and opined that there was no evidence of complex regional pain syndrome.

On January 17, 2018, Bruce Guberman, M.D., performed an Independent Medical Evaluation in which he diagnosed history of left lateral malleolus fracture and chronic regional pain syndrome. Dr. Guberman found that Mr. Campbell had reached maximum medical improvement and assessed 2% impairment due to nerve damage and 9% due to range of motion restrictions. His combined total impairment rating was 11%.

Mr. Campbell was treated by Wilfrido Tolentino, PA-C, who diagnosed left lower extremity complex regional pain syndrome type II on January 24, 2018. On February 12, 2018, Mr. Campbell treated with Samrina Hanif, M.D., who diagnosed complex regional pain syndrome. She referred Mr. Campbell to a pain clinic. Mr. Campbell treated with the Center for Pain Relief, which requested authorization for a trial spinal cord stimulator to treat causalgia of the left lower limb on February 23, 2018. A March 26, 2018, treatment note by Mr. Tolentino indicates the diagnosis remained complex regional pain syndrome. Mr. Tolentino requested authorization for a left lumbar sympathetic block to treat causalgia of the left leg. He also requested authorization of a spinal cord stimulator trial.

On March 27, 2018, in three separate decisions, the claims administrator denied a request for aquatic therapy, denied a request for a trial spinal cord stimulator, and denied a request for a comprehensive evaluation as well as a second opinion on a neurostimulator. On April 13, 2018, Mr. Campbell returned to Dr. Deer. The diagnosis remained complex regional pain syndrome. On examination, Mr. Campbell had increased swelling, blue coloration and coldness in the left ankle, as well as pain and limited mobility. Dr. Deer opined that Mr. Campbell's complex regional pain syndrome had progressively worsened.

Dr. Deer stated in an April 24, 2018, letter that Mr. Campbell developed complex regional pain syndrome as a result of his compensable injury. Dr. Deer stated that the condition was stable but had recently begun to worsen. Dr. Deer opined that Mr. Campbell had an 80% chance of sustained relief with a spinal cord stimulator. He stated that such treatment was directly related to the compensable injury. The claims administrator denied a request for a lumbar sympathetic block on May 3, 2018.

In a July 23, 2018, supplemental report, Dr. Mukkamala stated that he disagreed with Dr. Guberman's evaluation findings. He noted that Dr. Jin found Mr. Campbell to be at maximum medical improvement in her evaluation, and in his own evaluation, Dr. Mukkamala also found that Mr. Campbell had reached maximum improvement. Therefore, Dr. Mukkamala reasoned

that Mr. Campbell's condition had remained steady. Dr. Mukkamala opined that Dr. Guberman's report was unreliable and that his impairment assessment was inaccurate and invalid. Dr. Mukkamala noted that neither he nor Dr. Jin found impairment for the left toes.

In a July 31, 2018, supplemental report, Dr. Jin stated that Dr. Guberman rated impairment for Mr. Campbell's left toes, which were uninjured, and failed to compare the measurements to the right foot toes. She asserted that there should be no permanent impairment due to an ankle fracture. Lastly, Dr. Jin opined that the criteria Dr. Guberman used to rate neurological impairment was based on a peripheral nerve injury, a non-compensable condition. Dr. Jin found no evidence of peripheral nerve injury in this case.

During an examination performed by Dr. Deer on September 28, 2018, Mr. Campbell continued to complain of pain, anxiety, and depression. Dr. Deer diagnosed him with complex regional pain syndrome of the left limb and indicated that he should undergo an EMG/nerve conduction study, physical therapy, and a trial run with a lumbar spinal cord stimulator. That same day, the Center for Pain Relief requested an EMG of the left lower extremity to be performed by Barry K. Vaught, M.D. Mr. Campbell was subsequently diagnosed with complex regional pain syndrome of the left extremity by Mr. Tolentino, his PA-C, on November 21, 2018. On May 3, 2019, the claims administrator denied the request for an EMG of the left leg and for a referral to Dr. Pierson. Mr. Campbell protested the claims administrator's decision.

On June 3, 2019, Dr. Deer performed an examination and noted that he agreed with Mr. Tolentino that Mr. Campbell suffered from complex reginal pain syndrome type II of the lower left limb. Mr. Campbell continued with his regimen of medication and saw Ashley G. Comer, APRN, NP-C, on July 1, 2019, who diagnosed fracture of the ankle and complex regional pain syndrome Type 1 of the lower left limb. She referred him to R. Maylil, M.D., for a second opinion regarding course of treatment.

On August 2, 2019, Dr. Deer noted that Mr. Campbell continued to complain of left ankle pain and that he was visiting for a medication refill. Dr. Deer indicated that his best option was treatment with a spinal cord stimulator. In his plain for treatment, Dr. Deer prescribed Belbuca 75 mcg, and referred him to Scott Orthopedic for further recommendations regarding his left ankle. In correspondence dated August 9, 2019, Dr. Deer stated that Mr. Campbell had persistent abnormalities, and he reiterated his opinion that Mr. Campbell should be referred for a second orthopedic evaluation, as well as a trial of spinal cord stimulation. He also recommended an EMG/nerve conduction study. By Order dated September 26, 2019, authorization for the medication Belbuca 75 mcg was denied. Mr. Campbell timely protested the claims administrator's decision.

In an Independent Medical Evaluation report from Dr. Mukkamala dated November 6, 2019, it was concluded that Mr. Campbell had reached his maximum degree of medical improvement and probably had reached such by August 18, 2014, based upon his diagnostic testing. Dr. Mukkamala opined that he required no further treatment and agreed with the denial of an EMG/nerve conduction study that was previously requested. Dr. Mukkamala stated that Mr. Campbell had non-specific symptoms in his left lower extremity with no objective medical

evidence of an ongoing pathology. He also stated that there was no credible evidence of complex regional pain syndrome and that his bone scan was not consistent with such a diagnosis. Dr. Mukkamala noted no swelling and stated that Mr. Campbell's ankle had been stable for the last five years. No further treatment was recommended at this time. He opined that it was proper to deny authorization for the medication Belbuca. Dr. Mukkamala was of the opinion that the entire treatment that Mr. Campbell had been receiving for the last five years had been unnecessary and that there was absolutely no indication for a spinal cord stimulator. By Order dated December 18, 2019, the claims administrator denied Mr. Campbell's request for the medication AP/codeine tab 300/30 mm. He protested the claims administrator's decision.

In a Final Decision dated July 8, 2020, the Office of Judges found that the preponderance of credible medical evidence in the claim fails to establish the reasonableness and necessity of an EMG/nerve conduction study or orthopedic referral. The Office of Judges also concluded that the authorization for the medications Belbuca and codeine were appropriately denied by the claims administrator because the treating physician failed to sufficiently explain why the guidelines of West Virginia Code of State Rules § 85-20-53.14 should not be followed. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the decision in an Order dated November 4, 2020.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. While Mr. Campbell's course of recovery from his compensable injury has not been optimal, the medical evidence of record in this claim fails to establish that the requested treatment is medically necessary or reasonably required to treat his compensable injury. Drs. Jin and Mukkamala both opined that he requires no treatment for his six year old compensable injury at this time.

Affirmed.

**ISSUED: February 1, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton